O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4267 AHM (AGRx) | | Date | March 1, 2010 |
|---|---|---|---|---|
| Title | JOHN G. FINTLAND, et al. v. LUXURY MARINE GROUP, LLC, et al. | | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | | |
|---|---|---|---|
| Stephen Montes | | Not Reported | |
| Deputy Clerk | | Court Reporter / Recorder | Tape No. |
| Attorneys **NOT** Present for Plaintiffs: | | Attorneys **NOT** Present for Defendants: | |

**Proceedings:**     IN CHAMBERS (No Proceedings Held)

Plaintiffs John G. Fintland, Marie M. Fintland, and JG Asset Company, LLC (collectively, "Plaintiffs") have filed a Special Motion to Strike the First Amended Counterclaim ("FACC") of Defendant James J. Clayton ("Clayton") Pursuant to FRCP 12(f) and Cal. Code. Civ. Proc. § 425.16 (California's anti-SLAPP statute).[1]  Plaintiffs move in the alterative to dismiss the FACC for failure to state a claim.  For the reasons stated below, the Court GRANTS Plaintiffs' Motion.[2]  Specifically, the Court finds that Clayton has failed to state a claim for fraud and for an accounting, and that Clayton's claim for declaratory relief should be stricken under the anti-SLAPP statute.

## I.     FACTS

### A.     Plaintiffs' Lawsuit

---

[1] Clayton has also filed a Motion for Leave to File a Second Amended Counterclaim, which the Court will deal with in a separate order.  The Court notes, however, that before the Court ruled on that motion, Clayton could not amend his pleading to avoid Plaintiffs' anti-SLAPP motion.  *See ARP Pharmacy Services, Inc. v. Gallagher Bassett Services, Inc.*, 138 Cal. App. 4th 1307, 1323 (2006) ("A plaintiff may not avoid liability for attorney fees and costs by voluntarily dismissing a cause of action to which a SLAPP motion is directed . . . Similarly, a plaintiff cannot amend a pleading to avoid a pending SLAPP motion.").

[2] Docket No. 67

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4267 AHM (AGRx) | Date | March 1, 2010 |
|---|---|---|---|
| Title | JOHN G. FINTLAND, et al. v. LUXURY MARINE GROUP, LLC, et al. | | |

The facts that underlie Plaintiffs' lawsuit were set forth in detail in the Court's November 2, 2009 Order denying Clayton's motion to dismiss the FAC. (*See* Docket No. 55.) Because the facts in the underlying lawsuit are relevant to Plaintiffs' anti-SLAPP motion, the Court will summarize them here.

Defendants Clayton and Gregory Wheble ("Wheble")[3] are members of Defendant Luxury Marine Group, LLC ("LMG") (collectively "the Seller Defendants"). Plaintiffs allege that they hired Cantiere Nautico Cranchi, S.p.A., ("Cranchi") an Italian boat builder, through its Florida dealer LMG, to build a custom boat ("the Vessel") and to deliver it off the coastal waters of California to circumvent California sales tax. According to Plaintiffs, the Vessel was built but never delivered.

Plaintiffs allege that on July 22, 2008, they entered into an agreement (the "Purchase Agreement") with LMG to purchase a "Cranchi Mediterranee 43 Open" boat (the "Vessel"). (FAC ¶ 36.) Pursuant to the terms of the Purchase Agreement, Cranchi was to complete construction of the Vessel in Italy and deliver it to LMG in Florida in or about September 2008. Upon receipt of the Vessel in Florida, LMG was then to transport and deliver the Vessel to Plaintiffs in or near Marina del Rey, California. (*Id.* ¶ 39.) After Plaintiff signed the Purchase Agreement, LMG provided Plaintiff with a copy of a document entitled "Builder's Certification and First Transfer of Title" (the "Builder's Certificate"). (*Id.* ¶ 58.)

Plaintiffs paid LMG for the purchase price of the boat by making an initial cash deposit and financing the balance of the purchase price with a secured boat loan that Plaintiffs obtained from Defendants WFS, CGI, and Scott (collectively, the "Lenders"). (*Id.* ¶¶ 45-48.) The balance of the purchase price was wired to LMG in or about mid-August 2008. (*Id.* ¶ 51.) The Seller Defendants represented to Plaintiffs that these funds would be used to pay Cranchi for the construction and delivery of the Vessel to LMG on behalf of Plaintiffs. (*Id.*) LMG provided the Builder's Certificate to the Lenders in order to obtain a release of the proceeds from Plaintiffs' loan from the Lenders to LMG. (*Id.* ¶

---

[3] On August 13, 2009 Mr. Wheble filed for bankruptcy which resulted in a stay of all claims against him. (*See* Docket No. 28.) On January 22, 2010, Plaintiffs voluntarily dismissed Mr. Wheble as a defendant. (*See* Docket No. 82.)

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4267 AHM (AGRx) | Date | March 1, 2010 |
|---|---|---|---|
| Title | JOHN G. FINTLAND, et al. v. LUXURY MARINE GROUP, LLC, et al. | | |

59).

Toward the end of August 2008, Clayton contacted Plaintiffs and they mutually agreed to push back the anticipated delivery date of the Vessel to October 2008 based on representations Clayton made about the availability of a new hull color. (FAC ¶ 60.) The Seller Defendants failed to produce the boat in October 2008, and over the next few months periodically pushed back the delivery date of the Vessel. (*Id*. ¶¶ 62-66.)

On or about March 11, 2009, Defendants Clayton and Wheble came to California to meet with Mr. Fintland. (*Id*. ¶ 72.) It was at this time, Mr. Fintland alleges, that he discovered that the payment had not been remitted to Cranchi, and that as a result, Cranchi was refusing to ship the Vessel to LMG for delivery to Plaintiffs. (*Id*.) Clayton and Wheble, according to Plaintiffs, admitted that although they had received the full purchase price for the Vessel, they had, without Plaintiffs' consent, used these proceeds for purposes unrelated to Plaintiff's purchase of the Vessel. (*Id*. ¶¶ 73-74.)

On March 12, 2009, the Seller Defendants sent Plaintiffs a letter on LMG letterhead, in which they acknowledged that Cranchi was still owed $300,000, and that Wheble and Clayton were "personally committed to raise the necessary funds in order to deliver the boat as contracted for . . ." (FAC ¶75.) By mid-March 2009, Cranchi confirmed to Plaintiffs that it had not received the full amount for the Vessel from LMG, and that it would not deliver the Vessel until it first received full payment. (*Id*. ¶¶ 76-77.) Plaintiffs allege that they have still not received the boat, and now believe that LMG, Wheble, and Clayton never intended to deliver the Vessel. (*Id*. ¶ 90.) They allege that Wheble and Clayton made numerous misrepresentations to them regarding the Vessel, and forged the Builder's Certificate to induce Plaintiffs and the Lenders to remit payment to LMG. (*Id*. ¶¶ 69, 90-92.)

On June 15, 2009, Plaintiffs filed this action to recover the money they paid to LMG or in the alternative to force delivery of the Vessel.

### B.     Clayton's Counterclaim

On November 19, 2009, Clayton filed a Counterclaim against Plaintiffs, and filed his First Amended Counterclaim ("FACC") on November 21, 2009.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4267 AHM (AGRx) | Date | March 1, 2010 |
|---|---|---|---|
| Title | JOHN G. FINTLAND, et al. v. LUXURY MARINE GROUP, LLC, et al. | | |

In the FACC, Clayton alleges three causes of actions for (1) fraud, (2) declaratory relief, and (3) an accounting. In the fraud count, Clayton describes a "conspiracy" between Plaintiffs and Wheble in which they sought to defraud Clayton and Plaintiffs' lenders to obtain better financing terms. (FACC ¶¶ 21-34.) Second, he seeks a declaratory judgment that the various Defendants in Plaintiffs' FAC are distinct legal entities from Clayton, and that Clayton was not a party to the Purchase Agreement. (*Id*. ¶¶ 35-38.) In his third claim for an accounting, Clayton alleges that Plaintiffs and Wheble are in wrongful possession of Clayton's funds, and seeks an accounting of the allegedly fraudulent transactions by which Plaintiffs obtained Clayton's funds. (*Id*. ¶¶ 39-45.)

In the paragraphs preceding the three claims, Clayton alleges that Plaintiffs "wrongfully filed this lawsuit against Clayton with the intent to" distract and divert attention away from Plaintiffs' unlawful conduct, to conceal Plaintiffs' alleged fraud against Clayton and "Lenders,"[4] and to "wrongfully extort an unlawful ransom of settlement from CLAYTON." (FACC ¶ 16.) Clayton further alleges that Plaintiffs' claims "pervert the judicial process with the intent to obtain a result the law was not intended to effect." (*Id*. ¶ 17.) Clayton alleges that he has been damaged by his "wrongful injection" by Plaintiffs "into this lawsuit where [Plaintiffs] knew and [have] always known that there were no misrepresentations made by CLAYTON to [Plaintiffs]," and that Plaintiffs "knew when [they] filed this lawsuit that there existed no factual predicate or evidentiary support" for their allegations against Clayton. (*Id*. ¶ 19.)

## II. LEGAL STANDARDS FOR A SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA'S ANTI-SLAPP STATUTE

In 1992, the California Legislature enacted section 425.16 in an effort to curtail "strategic lawsuits against public participation" ("SLAPP" suits) brought primarily "to chill the valid exercise of . . . freedom of speech and petition for redress of grievances" and "to encourage continued participation in matters of public significance." Cal. Code. Civ. P. § 425.16(a). The California anti-SLAPP statute provides:

---

[4] The FACC does not specify who the "Lenders" are; presumably, Clayton is referring to the "Lenders" that Plaintiffs identify in the FAC as having provided them with their loan.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4267 AHM (AGRx) | Date | March 1, 2010 |
|---|---|---|---|
| Title | JOHN G. FINTLAND, et al. v. LUXURY MARINE GROUP, LLC, et al. | | |

A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Code Civ. P. § 425.16(b)(1). The statute defines an "act in furtherance of a person's right of petition or free speech" to include

(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . .

Cal. Code Civ. P. § 425.16(e). The basic act of filing a lawsuit constitutes protected petitioning activity. *Ludwig v. Superior Court*, 37 Cal. App. 4th 8, 19 (1995) ("[T]he constitutional right to petition . . . includes the basic act of filing litigation or otherwise seeking administrative action"). Additionally, statements made in relation to pending or upcoming litigation are protected by section 425.16 without any separate requirement that they be shown to be "an issue of public significance." *See id.* at 1123. California anti-SLAPP motions are available to litigants proceeding in federal court. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003).

In deciding an anti-SLAPP motion, the court first decides whether the moving party has made a threshold showing that the challenged cause of action is one arising from protected activity. *Rouse v. Law Offices of Rory Clark*, 465 F. Supp. 2d 1031, 1036 (S.D. Cal. 2006) (citing *Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal.4th 53, 67 (2002)). If the court finds that such a showing has been made, the court then decides whether the non-moving party has a probability of prevailing on the claim. *Id.*

"In analyzing whether the moving party has met its burden of showing that the suit arises from protected activity, the court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.'" *Neville*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4267 AHM (AGRx) | Date | March 1, 2010 |
|---|---|---|---|
| Title | JOHN G. FINTLAND, et al. v. LUXURY MARINE GROUP, LLC, et al. | | |

*v. Chudacoff*, 160 Cal. App. 4th 1255, 1262 (2008) (citing Cal. Civ. Code P. § 425.12(b)(2)). The "principal thrust or gravamen of the . . . cause of action" determines whether the anti-SLAPP statute applies. *Raining Data Corp. v. Barrenchea*, 175 Cal. App. 4th 1363, 1369 (2009). The mere fact that a counterclaim was filed after the plaintiff has initiated a lawsuit does not mean that the counterclaims "arise from" protected activity. *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002). Rather, the California Supreme Court has stressed that "the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." *Id.* at 78 (emphasis in original).

When a cause of action alleges both protected and unprotected activity, the cause of action will be subject to dismissal under the anti-SLAPP statute "unless the protected conduct is merely incidental to the unprotected conduct." *Barrenchea*, 175 Cal. App. 4th at 1369.

### III. DISCUSSION

Plaintiffs argue that the claims alleged in Clayton's FACC fall squarely within the anti-SLAPP statute because they arise out of Plaintiffs' act of filing their original lawsuit. Clayton disputes this, and argues that his counterclaims arise out of the alleged underlying conduct of the Fintlands (in conspiracy with Wheble). (Opp'n at 15.) The Court finds that Plaintiffs have not met their burden of demonstrating that Clayton's fraud count arises out of their protected activity, but that they have demonstrated that Clayton's claim for declaratory relief arises out of their protected activities.

### A. Fraud Claim

#### 1. Anti-SLAPP Motion

Plaintiffs argue that "[o]ther than alleging that the Fintlands commenced this lawsuit, the FACC alleges no facts describing how the Fintlands allegedly intended to defraud Clayton or what specific misrepresentations were made. The fraud claim therefore falls squarely within the ambit of the anti-SLAPP statute." (Motion at 11.) Although it is difficult to parse through Clayton's poorly drafted and convoluted fraud

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-4267 AHM (AGRx) | Date | March 1, 2010 |
|---|---|---|---|
| Title | JOHN G. FINTLAND, et al. v. LUXURY MARINE GROUP, LLC, et al. | | |

claim, a careful reading of it shows that it does not arise out of Plaintiffs' protected activities.

Clayton's fraud claim alleges that Plaintiffs (in conspiracy with Wheble) lied to and deceived the Lenders into lending Plaintiffs money. Clayton alleges the purpose of the conspiracy between Plaintiffs and Wheble was to obtain funds from Lenders to pay off Plaintiffs' old yacht, to take advantage of the Lenders' offer to finance Plaintiffs' purchase of the new yacht before Plaintiffs' credit adversely changed, to take advantage of the funds that Clayton previously invested in LMG for paying down its debt to Cranchi, and to avoid California sales tax. (FACC ¶ 24.) He further alleges that Wheble lied to him about LMG needing more money for its operations, and that he (Clayton) "personally injected over $100,000.00 of additional capital into [LMG] after [Plaintiffs and Wheble] had misappropriated other funds lent from CLAYTON to [LMG] for [LMG's] operations." (*Id*. ¶¶ 27-28.) Thus, the underlying conduct that supports his fraud claim appears to include:

- Plaintiffs' conspiring with Wheble to lie to and deceive Lenders into lending Plaintiffs money (FACC ¶¶ 21-22);
- Wheble lying to Clayton that LMG needed more money for its operations (FACC ¶ 27); and
- Plaintiffs and Wheble's misappropriation of Clayton's money and use of such money in furtherance of their conspiracy. (FACC ¶ 31.)

These acts do not constitute "conduct in furtherance of the exercise of the constitutional right of petition." Cal. Code Civ. P. § 425.16(e)(4). While it is true that the FACC is devoid of specific factual allegations in support of Clayton's fraud claim, and that Clayton references the lawsuit throughout the FACC, the fraud claim itself does not "arise out of" Plaintiffs' lawsuit. The fact that a cause of action "arguably may have been triggered by protected activity" does not necessarily mean that it "arises from" such activity. *Cotati*, 29 Cal. 4th at 78. Although Clayton's fraud claim incorporates by reference the preceding allegations—that Plaintiffs wrongfully filed their lawsuit against Clayton with the intent to conceal their fraud against Clayton and the lenders—the fraud claim itself is not "based on" the lawsuit. "A defendant in an ordinary private dispute cannot take advantage of the anti-SLAPP statute simply because the complaint contains some references to speech or petitioning activity by the defendant. . . . [I]t is the principal

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4267 AHM (AGRx) | Date | March 1, 2010 |
|---|---|---|---|
| Title | JOHN G. FINTLAND, et al. v. LUXURY MARINE GROUP, LLC, et al. | | |

thrust or gravamen of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies. . . ." *Martinez v. Metabolife Internat., Inc*., 113 Cal. App. 4th 181, 188 (2003) (citations omitted).

      Plaintiffs correctly point out that in the fraud claim Clayton seeks "recovery of damage to his reputation caused by" Plaintiffs and Wheble. (FACC ¶ 34.) This prayer for damages seems to allude to the damage caused by Plaintiffs' filing of their lawsuit, which Clayton describes in the paragraphs preceding the fraud claim. Clayton's declaration, which he submits in support of his Opposition to Plaintiffs' anti-SLAPP motion, hints that the fraud claim *does* arise out of Plaintiffs' filing of their lawsuit. He explains that the Fintlands threatened to implicate him in their failed scheme to avoid California sales tax and obtain favorable financing on the Yacht. (Clayton Decl. ¶¶ 7-13.) He further claims that the Fintlands made these false allegations with the intention that under "fear, threat of this lawsuit, imputation of disgrace, implication in a fraud and the other crimes that Clayton would personally bail them out from their misrepresentations that they made to their Lenders and the United States Coast Guard." (*Id*. ¶ 15.) Nevertheless, parsing through the near-incoherent provisions of the fraud claim reveals that it is based on Plaintiffs' alleged conspiracy with Wheble to deceive Lenders into lending Plaintiffs money and on Plaintiffs' and Wheble's alleged misappropriation of Clayton's money. Plaintiffs have thus not met their burden of showing that Clayton's fraud claim "arises out of" Plaintiffs' protected activity. Accordingly, it is not subject to the anti-SLAPP statute.

      **2.**    Rule <u>12(b)(6)</u> <u>Motion</u>

      As described above, Clayton's fraud claim vaguely describes a conspiracy undertaken by Plaintiffs and Wheble to defraud lenders and misappropriate funds from Clayton. Plaintiffs correctly point out that FACC alleges in "general and conclusory terms that the Fintlands embarked on a scheme to defraud the State of California (via alleged tax evasion) and their lenders," and that Clayton does not allege any specific misrepresentation that the Fintlands made to Clayton or that he relied on such representations to his detriment. (Motion at 10.) Nowhere does Clayton allege that Plaintiffs made any specific misrepresentation to him. Nor does Clayton explain how Plaintiffs' conspiring with Wheble to lie and deceive the Lenders into lending Plaintiffs money constitutes fraud against Clayton. The only allegation that comes anywhere close to stating a claim for fraud is the allegation that Wheble lied to Clayton about LMG

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4267 AHM (AGRx) | Date | March 1, 2010 |
|---|---|---|---|
| Title | JOHN G. FINTLAND, et al. v. LUXURY MARINE GROUP, LLC, et al. | | |

needing more money. This does not describe a misrepresentation made by Plaintiffs.

Moreover, the fraud claim falls well short of the heightened pleading requirements of Rule 9(b). Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." In order to comply with Rule 9(b), the pleader must allege the "time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation." *See Schreiber*, 806 F.2d at 1401. In addition, the pleader must explain why the alleged statement or omission was false or misleading *when made*. *See In re Glenfed Inc. Securities Litig.*, 42 F.3d 1541, 1548-49 (9th Cir. 1994) (*en banc*). Clayton's counterclaim for fraud does not come close to meeting these requirements. Accordingly, it is dismissed.

### B. Claim for Declaratory Judgment

Clayton's second counterclaim seeks a judgment declaring the rights of the parties to Plaintiffs' lawsuit, including that the Purchase Agreement was between Plaintiffs and LMG and not between Plaintiffs and Clayton, and that various other Defendants in the lawsuit are independent and distinct legal entities from Clayton. (FACC ¶ 38.) Clayton's declaratory judgment claim is predicated on the "hollow allegations of alter ego" that Plaintiffs allege in the FAC. (*Id*. ¶ 37.) The remedy that Clayton seeks is a judicial declaration that Plaintiffs' alter-ego allegations are baseless, and that as a matter of law Clayton did not defraud the Fintlands. (*Id*. ¶ 38.) The underlying conduct that supports this claim thus is Plaintiffs' filing of their lawsuit and seeking to hold Clayton liable under an alter-ego theory. Unlike the fraud claim, Clayton's declaratory relief claim arises from the specific alter-ego allegations that Plaintiffs make in their FAC, and not on the underlying controversy upon which the FAC is predicated. Because a lawsuit is unquestionably "protected activity" within the meaning of the anti-SLAPP statute, *see Briggs*, 19 Cal. 4th at 1115, Plaintiffs have met their burden of showing that the suit arises from protected activity.

The Court must next determine whether Clayton has a probability of succeeding on his claim. The Court concludes that he does not. In order to establish a probability of

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4267 AHM (AGRx) | Date | March 1, 2010 |
|---|---|---|---|
| Title | JOHN G. FINTLAND, et al. v. LUXURY MARINE GROUP, LLC, et al. | | |

prevailing on a claim for purposes of section 425.16(b)(1), the plaintiff must have "'stated and substantiated a legally sufficient claim.' 'Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.''" *Navellier v. Sletten*, supra, 29 Cal. 4th 82, 88-89 (2002) ("*Navellier I*") (citations omitted). "Thus, [the non-moving party's] burden as to the second prong of the anti-SLAPP test is akin to that of a party opposing a motion for summary judgment." *Navellier v. Sletten*, 106 Cal. App. 4th 763, 768 (2003).

Clayton's declaratory relief claim is utterly devoid of any facts that could support a favorable judgment. He alleges in conclusory terms that the Plaintiffs made "hollow allegations of alter ego" (FACC ¶ 37) in their "wrongfully filed lawsuit" (*Id.* ¶ 16). He has submitted *no* evidence in support of these claims, and has thus not shown that his counterclaim for declaratory relief is "supported by a sufficient prima facie showing of facts to sustain a favorable judgment." *Navellier I*, 29 Cal. 4th at 89. He should have challenged Plaintiffs' pleading on the merits via a motion instead of seeking this unfounded relief. Accordingly, Plaintiffs' special motion to strike the declaratory relief claim in the FACC is GRANTED.

### C. Clayton has not Alleged Facts that Support a Right to an Accounting

Clayton's third claim seeks an accounting of the "transactions which involved the misappropriated funds," so that Clayton can determine the exact amount due to him. (*See* FACC ¶¶ 72-73). His accounting claim is thus derivative of his fraud claim. Because Clayton has not stated a claim for fraud or alleged any facts that would otherwise entitle him to an accounting, Clayton's third claim for an accounting must fail.

## IV. ATTORNEYS' FEES

Section 425.16(c) of the California Code of Civil Procedure provides that a prevailing party on a special motion to strike "shall be entitled to recover his or her attorney's fees and costs." The California Supreme Court has noted that any party who "who brings a successful motion to strike is entitled to mandatory attorney fees." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001). Accordingly, Plaintiffs are entitled to attorneys' fees incurred in connection with their motion, but limited to count two of the

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4267 AHM (AGRx) | Date | March 1, 2010 |
|---|---|---|---|
| Title | JOHN G. FINTLAND, et al. v. LUXURY MARINE GROUP, LLC, et al. | | |

Counterclaim. By not later than March 12, 2010, Plaintiffs' counsel shall deliver to Clayton's counsel a written accounting containing the amount of fees incurred in connection with that count, supported by a sworn declaration setting forth the hourly rate and the amount of time reasonably allocated to that work. By not later than March 19, 2010, Clayton's counsel shall either pay the amount specified, refuse to do so, or offer to pay a different amount. If the parties do not resolve the amount of the required payment by not later than March 26, 2010, Plaintiff may thereupon move for an award of the specified fees. The Court reserves the right to impose sanctions on any party or counsel who acts unreasonably in this matter and thereby forces the Court to devote more time to this dispute.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion to strike with respect to Clayton's second claim in his FACC for declaratory judgment, and DISMISSES Clayton's first and third claims for fraud and an accounting for failure to state a claim.

|  | : |
|---|---|
| Initials of Preparer | SMO |